70  403
96  375

# Chapman *v.* Fields.

*Bill in Equity for Assignment of Dower, and Account of Rents or Mesne Profits.*

1. *Reformation of mortgage in equity; when takes effect, as against widow, not party to suit.*—When a conveyance or contract is reformed in equity, on the ground of mistake, the reformation relates back, for many purposes, as between the immediate parties, and takes effect as of the day the writing was first executed; but, as against the widow of the deceased mortgagor, claiming dower in lands which were omitted from the mortgage by mistake, a decree correcting the mistake and foreclosing the mortgage, she not being a party to the suit, and not being charged with notice of the mistake, takes effect only from the day on which it is rendered. If such decree were allowed to relate back, her right of dower might be barred before she knew that the land had been aliened.

APPEAL from the Chancery Court of Morgan.

[Chapman v. Fields.]

Heard before the Hon. H. C. SPEAKE.

HUMES & GORDON, for appellant.

CABANISS & WARD, contra:

STONE, J.—This is an application by Mrs. Fields to have dower allotted to her in the north-east quarter of section 34, township 5, range 1, west, lying in Morgan county, and to recover rents or mesne profits. The defense relied on is, that the lands were aliened by the husband in his lifetime, and that more than three years elapsed between the death of the husband, Jackson Fields, and the asserted right of dower, made by this bill. The facts are these:. In 1872, Mr. Fields, by mortgage deed, conveyed the *south-east* quarter of said section 34, to secure a debt due to Reuben Chapman. In March, 1873, Fields, the mortgagor, died. Mrs. Fields survived him, and had not joined in the mortgage. There were three children, all adults, the fruit of the marriage of Mr. and Mrs. Fields. Mrs. Fields, immediately after the death of her husband, took possession of the said *north*-east quarter of said section 34, and claimed and received the rents and profits, until the lands were sold, as hereafter shown. In September, 1875, Reuben Chapman filed a bill to correct and reform said mortgage, and to foreclose it. He alleged that the lands conveyed by the mortgage were by mistake misdescribed—that it was the intention of the parties to embrace and convey in the mortgage the north-east quarter of said section, instead of the south-east quarter. He made the three heirs at law parties defendant, but did not make the widow, Mrs. Fields, a party. A decree *pro confesso* was taken against the defendants, on personal service; the mortgage reformed, so as to make it convey the north-east quarter instead of the south-east quarter of said section; a decree of foreclosure rendered, and the lands by the corrected numbers sold, and purchased by Reuben Chapman. This was in 1877, and Chapman then took possession of the lands. Mrs. Fields filed the present bill in February, 1878,— less than three years after Chapman filed his bill to correct and foreclose the mortgage, and in less than one year after the decree was rendered, reforming the mortgage, and decreeing the sale. The mortgage sale was made in November, 1877.

As between the immediate parties to a contract executed in mistake, and afterwards reformed by decree of the Chancery Court, it takes effect as of the day of its first execution, for many purposes. So, creditors at large, or purchasers with notice, can assert no rights which they could not have asserted, if there had been no mistake, and the instrument truly set forth

[Chapman v. Fields.]

the contract intended to be made.—Story's Eq. Jur. §§ 139, 165. This case presents a different question. It is not shown that Mrs. Field had knowledge that the north-east quarter of the section was intended to be conveyed by the mortgage. There is no testimony tending to show that. The most liberal construction of the testimony goes only to the extent, that she was informed Chapman in his bill averred that the alleged mistake had been made. She could not know that this averment could be proved; and if she had consulted the record of the mortgage, this would have given her no information of the mistake charged. We think that, as to her and her rights, the alienation must be held to have taken effect, only from the time the mortgage was reformed. That was the first time the mortgage in fact conveyed the lands in which she claimed dower. To hold, in such case, that the alienation takes effect from the date of its attempted execution, would expose the widow to the possibility and danger of being barred of her dower, before she could know it had been intended or attempted to be alienated by the husband.

In the case of *Blodgett v. Hobart*, 18 Verm. 414, a mortgage had been so framed as to omit by mistake certain lands intended to be conveyed. Before the mistake was discovered, certain statutory proceedings in foreclosure were taken, and the mortgagor was allowed a certain time to redeem, which he suffered to expire without paying the debt; and the mortgage stood foreclosed, with the equity of redemption barred. The mistake being discovered, a bill was filed to reform the mortgage, and relief was decreed as prayed for. It was contended for the mortgagee that, inasmuch as the mortgagor had been allowed the requisite time to redeem under the first foreclosure proceedings, and had not done so, he should not be allowed further time as to the lands made subject by the reformation of the mortgage. A tract of land known as the "home farm," and another piece of two and a half acres, were the lands which had been omitted from the mortgage by mistake; and under the decree, those lands were declared subject to the debt. The court said: "The effect of this must be, to leave in the mortgagor an equity of redemption, at least in the 'home farm' and the other piece, unless there is something in the case to show that he should be debarred from this right. It will not do to create a mortgage and foreclose the equity of redemption at one and the same breath." So, that court held that the reformation was the *creation* of a mortgage, as to the land which had been omitted from the mortgage as drawn. The same doctrine was declared in *Provost v. Rebman*, 31 Iowa, 419. See, also, Waterman on Specific Performance, § 372.

We find no error in the record, and the decree is affirmed.