Thomson, J.,
delivered the opinion of the court.
This litigation involves the validity of certain mechanics’ liens, and the question of their priority to a trust deed. The appellees were severally claimants of mechanics’ liens upon a piece of real estate of H. W. Rankin, in Pueblo county, on account of material furnished for, and work and labor performed in, the construction of buildings upon the land by contract with Rankin. The appellant, Small, claimed a prior lien upon the property, by virtue of a deed of trust executed by Rankin to the appellant James, as trustee, to secure the payment to Small of an indebtedness owing to him by Rankin. Upon the final hearing, the court sustained the several liens of the appellees, adjudged them priority over the trust deed, and entered a decree accordingly. Small appealed from the judgment.
With a few exceptions which we shall notice hereafter, the contracts under which the materials were furnished, and the work done, were made, and the furnishing of the materials, and the performance of the work, commenced, some time before July 2d, 1893. The trust deed was executed on the 15th day of May, 1893 ; but was not filed for record with the recorder of the county until the 19th day of July, 1893. It appears that the parties furnishing the material, and doing the work, had no notice or knowledge of the existence of the trust deed at the time they severally commenced to furnish material and do work. At that time the mechanics’ lien law of 1883, as amended by the act of 1889, was in force. (See division 2, chapter 77, Mills’ Annotated Statutes.) This law was repealed and a new law enacted by the legislature, at its session in 1893, which went into effect on the 2d of July, 1893, and which provided that the repeal of the prior laws should not be construed to affect any existing right, either as to remedy or otherwise, under the laws repealed. Chapter 117, Session Laws of 1893. The new law became effective before any of these claimants perfected their liens by filing the lien statements required by law. Some *438 reasons are given why we should hold these lien statements invalid, and other objections are urged to the decree, to all of which we shall give due consideration.
First. The requirements of the act of 1893 in relation to the contents of the lien statement, and the manner of perfecting the lien, differs materially from those of the preceding statutes; and it is contended that the method provided for perfecting the lien pertains entirely to the remedy; that the remedy is governed by the law in force at the time it is sought; and that, therefore, the lien statements in question, having been made after the act of 1893 became operative, should have conformed to the requirements of that act. These statements are lacking is some of the particulars demanded by the latter act, but they comply substantially with the amendment of 1889.
In this connection we shall not enter into any discussion of the effect generally of remedial legislation upon preexisting rights, because as we construe the statute of 1893, its provisions in relation to the contents of lien statements are not, and were not intended to be, applicable to contracts which were made, and liens which had their inception, prior to the time when it took effect. It does not confine itself to a mere change in the form of the statement, but in providing what the statement shall contain, it makes material additions to what was theretofore required. It undertakes to regulate the terms and conditions of the original contracts under which materials are furnished and labor done. Section 2 says: “ No part of the contract price, shall, by the terms of any such contract, be made payable, nor shall the same, or any part thereof, be paid in advance of the commencement of the work, but the contract price shall, by the terms of the contract, be made payable in installments, or upon estimates, at specified times after the commencement of the work, or on the completion of the whole work ; Provided, That at least fifteen per cent, of the whole contract price shall be made payable at least thirty-five days after the final completion of the contract.” Having direct reference to these provisions, *439 section 3 requires the lien claimant to set forth in his statement, among other things, the terms and conditions of his contract. The contract, the terms and conditions of which must be set forth, is the contract made in pursuance of the provisions of the act, and must be an express contract. The contract provided for is the first, and the filing of the statement the last, step in the acquirement of the lien; and the two are so connected by the language of the statute as to be simply different parts of one continuous proceeding.
The law in force when this act was passed did not attempt to regulate the manner, in which contracts should be made. They might he either express or implied. If express, except, perhaps, the stipulated .price for the work or material, they might contain no mention of terms or conditions; and an implied contract is without terms or conditions of any kind, except such as the law supplies. No reference to the contract under which the work was done or materials furnished was required in the lien statement. A person doing work or furnishing material under an implied contract, or an express contract in which there were no specific terms or conditions, would find it impossible to comply with the requirements of the act of 1893 in the matter of his lien statement; and a forced resort to the provisions of that act for the purpose of perfecting his lien would involve a sacrifice "of his rights. It seems manifest that the later statute was designed to operate only in futuro. The general tenor of the act leads to this conclusion; and if more were wanting, the provision preserving existing rights, whether pertaining to the remedy or otherwise, convinces us beyond a doubt that as to the proceedings necessary to perfect the lien, it was not the intention that the statute should have any retroactive effect. It is our opinion, therefore, that the lien statements in question, having been made and filed in conformity with the amendment of 1889, are valid, and the liens enforcible, unless there was a failure otherwise to comply with the law.
Second. The materials were furnished for, and the work *440 done upon, two houses, erected at the same time upon three adjoining lots; each house being situated partly on an outside lot, and partly on the middle lot; and the evidence was that the contracts, severally, were entire and indivisible, embracing both houses, and that the material was used upon them indiscriminately. The lots were each twenty-five feet in width, and as the houses were placed upon them without reference to their boundaries, we must regard the three lots as constituting one tract of land. The statute of 1893 permits the enforcement of a mechanic’s lien against two or more buildings constructed by the same person or persons under the same contract, but requires that the materials furnished and work done shall be apportioned among the several buildings in proportion to the value of the materials and labor going into each of the buildings, and that a statement of the amount apportioned to each building shall be filed with the lien claim. There were no such apportionments, and, consequently, no such statements, in this case.It is contended that the lien statements are invalid by reason of the- want of compliance in these respects with the law of 1893. As the materials were furnished and the labor performed under contracts entered into prior to the taking effect of this law, and with reference to the law then in force, which imposed no such duties or burdens upon the contractors, and as the furnishing of the materials and the performance of the labor commenced under the old law, we are of the opinion that in these particulars the proceedings were governed by the statute of 1883, as amended in 1889, and not by the act of 1893 ; and that therefore neither apportionment nor statement of apportionment was necessary.
But a question of more difficulty is involved in the fact that two separate houses were embraced in a single lien. The question is not very clearly raised by the assignment of errors, but it is the subject of argument, and we feel it incumbent upon us to dispose of it. Section 1 of the amendatory statute of 1889 provides as follows: “ Whoever shall do any work or furnish any material by contract, express or *441 implied, with the owner of any land, his agent or trustee, for the construction, enlargement, alteration or repair of any building or other structure upon such land, or. in making any other improvements or in doing any other work upon such land, as stated in the following sections, shall have a lien upon such land, building, structure or other improvement for the amount and value of the work so done or material so furnished, to the extent of the interest or claim of such owner thereto at the time of the commencement to do such work or to furnish such material.” The words “ building ” aud “structure” are each used in the singular number, and a literal construction of the language, if we should look no further into the act, might confine the right to a lien to a single building or structure. But a lien is allowed, to the extent of the owner’s interest, upon the land on which the building is located. The lien statement must contain a description of the land sufficient to identify it, but need not refer to the improvements. The form of the statement would be the same whether the lien is claimed on account of one house, or on account of several houses, erected on .the same tract. In Barnard v. McKenzie, 4 Colo. 251, Judge Elbert said: “Notwithstanding the lien was unknown to the common law and is purely the creature of the statute, in view of its equitable character we think the statute giving it should be liberally construed to advance its objects.” See, also, Williams v. Uncompahgre Co., 13 Colo. 469. We think it was the intention of the lawmakers to confine each lien, in so far as the land upon which it might operate is concerned, to a single tract; but when under one contract different buildings are erected upon the same piece of ground, the statute furnishes no insurmountable reason why the lien upon the ground should not embrace them. In such a case it would not violate any rule of construction to give the words “ building ” and “ structure,” as used in the statute, a plural signification; and as the statute is to be liberally construed to the end that full effect may be given to its provisions, we think it the duty of courts to attach such *442 meaning, singular or plural, to the words, as the circumstances of the particular case under consideration may require. While the language of the statute itself would lead us to this conclusion, our opinion is fortified and strengthened by very high authority. We extract the following from the opinion in the case of Wall v. Robinson, 115 Mass. 429:
“ The statutes are designed to give to the mechanic who by his labor and skill enhances the value of an estate the security of a lien upon the estate to the extent he has thus added to its value. They provide that any person to whom a debt is due for labor performed or furnished in the erection, alteration or repair of any building or structure, by virtue of an agreement with, or by consent of the owner, shall have a lien upon such building or structure and upon the interest of the owner thereof in the lot of land on which the same is situated.
“In the case at bar the petitioners have performed labor upon several buildings situated upon the same lot under an entire contract for an entire price. We think such a case is within the purpose of the statute and the intention of the legislature. The parties by their contract have connected the several buildings and treated them as one estate. Under the contract the labor performed upon each building creates a lien upon the whole lot and therefore upon all the other buildings.
“ Although it cannot be said with strict accuracy that the labor for which the lien attaches was all performed on each building affected by it, yet it was all performed on one estate; and to deny the lien would defeat the spirit of the statute by a too literal adherence to its letter.”
It will be observed that in the Massachusetts law, as in our own, the singular nouns “building” and “structure” were used. See, also, Carr v. Hooper, 48 Kan. 253; Stock Yards v. O'Reilly, 85 Ill. 546.
In the case before us the buildings were not upon a single lot, but they were so placed on three adjoining lots as to constitute the lots one parcel of land. The statute under *443 which, these statements were filed provides further that in case a building shall occupy two or more lots, or other subdivision of land, such lots or subdivisions shall be deemed one lot for the purposes of the act; and that the same rule shall hold good in case of other improvements which are practically indivisible. Calling the word “ building ” “ buildings,” as we are authorized to do, we have exactly this case. The two buildings occupied three lots. Each house was situated on two lots,' — one outside lot, and the same center lot, • — so that there was no separate improvement upon any one of the lots; and a lien could not be acquired upon either of the houses independently, without taking a portion of the land which belonged to the other house. The improvements were indivisible in this sense, that they could not he apportioned among the several lots. Separate liens upoir the several lots would cut each of the houses in two, and would not afford to the parties interested the remedy which the statute was designed to give them. The three lots were therefore, for the purposes of the liens, one lot, and each lien properly embraced the three lots and both houses. Bachelder v. Rand, 117 Mass. 176; Doolittle, v. Plenz, 16 Neb. 153; Miller v. Shepard, 50 Minn. 268.
Objection is specially made to the lien statement of the appellees, Foley & Leonard. It embraced their own claim, for materials furnished directly by them, and also the claims of certain other parties which, as alleged, had been assigned to them. It set forth the total amount due on each claim separately, but gave only the aggregate credit, which was $10.49. It is urged, on the authority of Hanna v. Savings Bank, 3 Colo. Appeals, 28, that the statement should have showed what amount should be credited on each separate claim, and that by reason of the credits being aggregated, the statement was void. In that case, as in this, the statement embraced a number of claims which had been assigned to the lien claimant, but the several sums due were not given, and the whole were combined in one gross amount. For this reason the statement was adjudged invalid. We adhere to *444 that decision. We believe it to be correct upon the facts. In this ease, however, each separate indebtedness is set forth, and the statement before us is not open to the objection which was made to the other. But is this statement bad on its face because, instead of dividing the credit among the several claims, it gives only a sum total? The statute requires a statement showing the total amount of the indebtedness, the credits thereon, if any, and the balance due the claimant. This language has reference to original claimants, and an assignee must proceed upon each assigned claim exactly as his assignor must have proceeded if there had been no assignment. But a statement need not mention credits if there are none, and an omission of credit is equivalent to a statement that the claim is not entitled to a credit. If no pajunents were made upon any of the claims until after the assignment, the holders had the right to make such application of the amount paid as they should see fit, unless they were otherwise directed; and if, instead of dividing it among the several claims, they applied it in reduction of the gross amount, they merely exercised a right which the law gives them. The statement does not, and it need not, show when the payment of $10.49 was made, and the evidence was equally silent on the subject. The statement, therefore, amounts to this, that prior to the assignment there were no credits,.that the amount for which credit was given was paid afterwards, and that upon its payment Foley & Leonard exercised their privilege of applying it upon the sum total of the indebtedness. We do not find in this objection to the lien statement in question any reason for reversing the judgment.
One of Foley & Leonard’s assignors was The Holmes Hardware Company. It appears that of the hardware furnished by them for the houses, after. it had been delivered at the proper places, $35.00 worth was removed by Mr. Rankin to another house, and was not actually used in these houses. So far as appears, this material was removed by Rankin without the knowledge of the Hardware Company. *445 Counsel say it was error to include this amount in the decree. The statute gives to any person, who, by contract with the owner, shall furnish any material for the construction of any building, a lien upon the building, and the land it occupies. He is not required to see that it actually goes into the building. If, by contract, he furnishes it for the building, whether it is used there or not, he is entitled to the lien. This is what the statute says, and we cannot by construction distort its language into something else.
The statute further provides that the lien shall relate back to the time of the commencement to do work or to furnish materials, and that it shall have priority over any and every lien subsequently intervening, or which may have been created prior thereto, hut which was not then recorded, and of which the lienor had no notice. Therefore, in adjudging these liens prior to that of the appellants’ trust deed, the court simply followed the letter of the statute..
We shall now proceed to the consideration of objections specially made to certain of the lien claims. Foley & Leonard and The Colorado Hammer Brick Company were joined as plaintiffs, and The Miller Creek Land & Lumber Company and other lien claimants were, together with the appellants, made defendants. Counsel for appellants is in error in assuming that Foley & Leonard claimed as assignee of the Brick Company. Although Foley & Leonard and the Brick Company joined in the complaint, their claims were distinct, and each Avas seeking the enforcement of an independent lien. Folej1- & Leonard, and some of the defendants who were asserting liens, were assignees of claims for materials furnished, and work done, in the construction of the buildings. In some cases the assignment was made of the simple claim, and the assignee embraced the claim in his own lien statement. In other cases the assignor first perfected his lien by making and filing his statement, and then assigned the perfected lien. To these assigned claims the objection is made that it Avas not pleaded or proven that the assignments were in writing. The act of 1883, as amended in 1889, provided that any party *446 claiming a lien, might assign, in writing, his claim and lien to any other claimant or person, who should thereupon have all the rights and remedies of the assignor; that the assignment might be made before or after the filing of the statement, and that when made before, the claim assigned might be included in the lien statement of the assignee. As the right to a mechanic’s lien exists only by virtue of the statute, a substantial compliance with the statutory provisions is essential to the validity of such a lien. In order, therefore, to enable the assignor to assert a lien in virtue of an assigned claim, the assignment must be in writing. Concerning each of these assigned claims, the allegation of the complaint or cross complaint setting it forth is simply that it was assigned to the complaining party ; and it is contended that this allegation is not sufficient, because, as the statute requires the assignment to be in writing, it should affirmatively appear in the complaint that it was in writing. The allegation of assignment is not denied by the appellants in their answer, and the fact of assignment is therefore admitted. .If the assignment was sufficiently pleaded, the admission dispensed with the necessity of proof on the subject. By the terms of the statute, the claims or liens could not be assigned, except in writing, so as to enable the assignee to enforce them against the property. For the purposes of this proceeding, if they were not assigned in writing, they were not assigned at all. We think the word “assigned,” as contained in the allegation, should be held to include every thing necessary to a valid assignment. If the assignment had been denied, the allegation could have been supported only by a written assignment; but the failure to deny admits the assignment, and as the assignment could exist only in writing, it admits a written assignment. In the case of contracts or promises, void by the statute of frauds unless in writing, it has been held that it is sufficient to allege the agreement generally, without specifically averring that it was in writing. Mullaly v. Holden, 123 Mass. 583; Elting v. Vanderlyn, 4 Johns. (N. Y.) 237; Piercy v. Adams, 27 Ga. 109; Cross v. Everts, 27 Tex. 523.
*447 The two classes of cases may not be strictly analogous, and the authorities are not cited as being absolutely conclusive of the question raised in this ease; but we think, for the reasons which we have given, that the allegation of assignment was sufficient, and that the admission that the assignment was made as alleged is an admission that it conformed to the requirements of the statute.
It is objected to a number of the lien claims embraced in this suit that the statements were prematurely filed, it being contended that the provision of the act of 1898, respecting the time within which lien statements shall be filed, is purely remedial, and that therefore in filing such statements after the act took effect, notwithstanding the liens attached before, parties must conform to its provisions. No very clear distinction is made in argument between the statutory duties in this respect of original contractors and those of subcontractors, and the objections urged apparently apply to all alike. But as to the time within which the lien statement of an original contractor must be filed, there is no substantial difference between the act of 1883 and that of 1893. The former provided that in the case of an original contractor, the statement should be filed within sixty days after the time when the last work should be done, or the last material furnished, and that the statement of a subcontractor should he filed within forty days after the doing of the last work or the furnishing of the last materials. The act of 1893 requires the lien of an original contractor to be filed within sixty days after the completion of his contract, and that of every other person within thirty days after the completion of the building, improvements, or structure. In relation to original contractors the requirements are practically the same in both statutes. If the contractor’s contract is completed, he has done the last work or furnished the last materials ; and if he has done the last work, or furnished the last materials, his contract is completed. The effect of the language in each statute is the same. In the matter of filing their lien statements the original contractors appear to have brought them *448 selves within both statutes, and in so far as the objection maybe intended to apply to them it is not tenable. In the case of subcontractors, however, the requirements of the two statutes are substantially different. The act of 1893 contains the additional provision that cessation from labor for thirty days upon any unfinished building or structure shall be deemed equivalent to completion for the purposes of the act. The lien statements of the subcontractors appear to have been filed before the completion of the buildings, and before cessation of labor upon them for thirty days; and if they were bound in this respect to conform to the requirements of the act of 1893, counsel’s position is correct, and the statements were prematurely filed.
The question then is, was it compulsory upon the subcontractors, whose liens had attached before the act of 1893 took effect, but whose lien statements were filed afterwards, to proceed under the provisions of that act? The law undoubtedly is that the form of remedies may be changed by legislation, and that when one form of remedy is replaced by another, the latter must be resorted to, unless its effect is to destroy or substantially impair preexisting rights. The contracts of these parties were made, and their performance entered upon, with reference to the law in force at the time. Their liens accrued when they commenced to do the work or furnish the materials, and at that time certain rights attached of which subsequent legislation could not deprive them. They had the right under the statute of 1883- — the law then in force — to perfect their liens by filing their lien statements within forty days after they had done their last work or furnished their last materials. Only by the filing of these statements could their liens become available. It certainly was not in the power of the legislature to deprive them entirely of the right to perfect their liens, and thus render the liens worthless; and if the legislature could not by enactment destroy the value of liens in existence, neither could it substantially diminish or impair their value. The act of 1893 compels subcontractors to postpone the filing of their state *449 ments until after the completion of the building or improvements, or until after the cessation of work for thirty daj's. The completion of a building, without cessation of work, might require years after a subcontractor had finished his own contract; and the time when he would be able to enforce his claim would depend upon the motions — speedy or dilatory — of others. The right in respect to the perfecting and enforcement of his lien which he had when it accrued, and a right with reference to which he entered into his contract, would thus suffer serious impairment. We do not intend, however, to rest our decision upon the constitutional inhibition against retrospective legislation. The validity of such legislation, where a new remedy is provided which involves an already existing right, is ably discussed by Mr. Justice Campbell in Spangler v. Green, 21 Colo. 505; and in so far as the principle announced by him may be applicable in this case, we content ourselves with a reference to his opinion. We prefer to rely upon the language of the last section of the act of 1893, which provides that the repeal of the former enactments shall not be construed to. affect any existing rights either as to remedy or otherwise. From the prominence which is given to the word “remedy,” we think it clear that the legislature intended that in so far as the new remedy placed a party contracting under the old law at a disadvantage, and imposed new burdens upon him, he should not be compelled to resort to it, but might proceed in accordance with the law in force when his rights accrued. The act of 1893 imposed disabilities upon him in the matter of the filing of his lien statement, which did not exist when he made his contract and entered upon its performance, and which, if they had existed might have materially influenced the character and terms of his contract; and if it was not the intention of the legislature that he might assert his rights unembarrassed by the new burdens and disabilities there is no virtue in language.
Counsel for appellants cites us to the decision by this court in Orman v. C. R. Ry. Co., 5 Colo. App. 493, as support *450 •ing his contention that after the act of 1898 became effective, the remedies which it provided must in all cases be pursued. Counsel seems to have seriously misunderstood that decision. No question of that kind was before the court. That suit was brought by an original contractor, and the only question for determination was whether the action was commenced in time. Referring to the time within which the statement should have been filed, the court incidentally remarked that under the circumstances it should have been filed under the provisions of the act of 1893; but the court held that the lien was filed in apt time, so that the question of time in relation to the lien was not in the case; and in view of the fact that the act of 1893 impaired no right which an original contractor had under the old law in the matter of filing his statement, there is no inaccuracy in the expression. What was decided, and all that was decided, was that the suit for the enforcement of the lien should have been brought within the time limited by the new law. The statute of 1883 required suit for the enforcement of the lien to be brought within six months after the statement was filed, while by the terms of the law of 1893 the action must be commenced within four months after the completion of the structure or improvement. In that case the construction was complete before the lien statement was filed. Prescribing the time within which suit must be brought pertains purely to the remedy. It affects no right connected with the contract, or growing out of it, and deprives the lien claimant of no benefit to which his contract or his lien entitles him. The legislature may shorten the time by which actions on existing contracts will be barred, provided it does not fix the limitation so as to cut off the right of action on demands against which the former statute had not run, or does not unreasonably shorten the time within which suit may be brought on such demands. With these limitations such legislation, although retroactive, will be sustained. Wade on Retroactive Laws, secs. 12, 224. We accordingly held upon the facts of *451 that case that the plaintiff should have brought his action within the time limited by the act of 1893.
Each lien claimant is required by the new statute to give the owner written notice of his intention to file his statement at least twenty-four hours before it is filed. It is questionable whether this was done by some of the claimants, and it is urged that their failure was fatal to their liens. Under the law in force when their lien rights accrued, such notice was not required; and whether it was incumbent upon them before they could secure a valid lien to do something of this nature which was unnecessary when their liens attached, we need not now decide. As it-is the owner to whom the notice must be given, it seems manifest that the provision was intended for his personal benefit. It might be of benefit to him to know that a lien upon his property would be filed within a specified time; he might pay the debt and stop the proceeding; but notice to him would not be notice to others, and no perceivable benefit could be derived bj- them from notice to him of which they knew nothing. As only himself could be injured by the want of notice, it follows that he only could take advantage of its absence. But in this case the owner is not complaining. He made default, and we are unable to see how these appellants can be heard to say that he was not notified.
We come now to the exceptions to which we alluded in a former part of this opinion. C. S. Northway, C. D. Conrad and W. M. Ramsay were subcontractors. Their several contracts were all made after the act of 1893 took effect. They therefore contracted with reference to its provisions, and in securing their liens were bound to follow the method which it provided. This they failed to do, and for that reason their liens' were invalid, and should have been rejected. The claim of Northway was $12.00 for work, and $1.10 for recording his lien statement, that of Conrad was $12.00, and that of Ramsay $10.60. Interest was allowed on these claims. It was erroneous to include them in the decree; but the error does not necessitate a remanding of the cause. In all other par *452 ticulars, so far as we are able to see, the judgment is correct, and a new decree will be entered here eliminating the invalid claims, but otherwise conforming substantially to the decree of the district court.

Decree ordered accordingly.