(57 N. W. Rep. 345.)

---

## JAMES RIVER LUMBER CO. vs. HENRY DANNER.

Opinion filed December 28th, 1893.

**Mechanic's Lien—Priority to Mortgage.**

> The priority of lien on a building given to one who furnishes material, as against an existing incumbrance on the land, by the provisions of § 5480, Comp. Laws, does not exist, unless the building or improvement on which such priority of lien is claimed was wholly erected subsequently to the attaching of the lien of the incumbrance, and the lien claimed to be prior thereto is for work done or material furnished in such erection. Such priority of lien exists only when the holder of such lien can have the building or improvement sold, and removed from the land, without unlawfully invading the rights of the earlier incumbrancer.

Appeal from District Court, Stutsman County; *Rose, J.*

Action by the James River Lumber Company against Henry Danner to enforce a mechanic's lien. From a judgment for defendant plaintiff appeals.

Affirmed.

*S. L. Glaspell*, for appellant.
*Nickeus & Baldwin*, for respondent.

CORLISS, J This appeal brings before us a contest for priority of lien. The strife is between a mortgagee of real property and the holder of a mechanic's lien thereon.' So far, the mortgagee has been successful. The trial court decided that the respondent's mortgage lien was prior to that of the appellant, as to the entire property. The appellant does not challenge the correctness of this ruling, so far as the land itself is concerned, but insists that his lien upon the building on the land is superior to that of the respondent's mortgage. We must examine the facts: On May 7th, 1886, the respondent, being the owner of the land, agreed to sell it to one Bauer; and on July 23, 1887, he executed to Bauer a deed for the premises, taking back from Bauer a mortgage to secure a portion of the purchase money. The building on the land at the time the contract of sale was entered into was a brewery. Subsequently, and before the deed was delivered, this building was partially destroyed by fire. The building consisted of several parts, but all under one roof. As the extent of the ravages of the fire throws direct light on the question whether an entirely new structure was erected, or only the remains of an old one added to, we must quote the finding of the court on that subject. It is as follows: "While defendant Bauer was in possession of the premises aforesaid, the said brewery and ice house buildings were partially destroyed by fire; that is to say, the frame or wooden portion of the same, above the stone foundations, was almost wholly destroyed. Nearly all of the third story of the southern or main ice house was burned, leaving the three floors (this part of the building was three stories high) and all that part of the buildings beneath the floor, and leaving also, unburned, a small part of the siding and studding of the third story. There remained of the ice house number two, unburned, two floors and all beneath them, and a small part of the siding and studding, this part of the building being two stories only. The northern ice house was nearly all burned, a small part of the siding, studding, and stone walls, only, remaining of that part of the building called the 'Brewing Room;' there remaining after the fire the

first story and a small part of the second, (this part is two stories high;) the balance burned. These various rooms are all under one roof, and make but one building." The consideration for the sale from Danner to Bauer was $21,000. The building was insured, and the insurance money was paid to Danner, who credited the same on the purchase price, and took back a mortgage from Bauer for $9,000. Subsequently to the execution, delivery, and recording of this mortgage, the appellant furnished materials which were used in the rehabilitation of this partially destroyed structure. It is for the balance remaining due for such materials that it claims a lien on the building paramount to the lien of the mortgage. It is clearly not a case of the erection of an entirely new structure. The finding of fact which we have quoted is fatal to such a view, and, in addition, the courts find that the portion of the building which escaped the fire was worth $3,240.

We will now turn to the statute upon which appellant relies for support: Section 5469, Comp. Laws, gives a lien to any person who shall furnish any material for any building, erection, or other improvement upon land. Section 5480, which is the important section, declares that "the lien for the things aforesaid or work, shall attach to the buildings, erections or improvements, for which they were furnished or done, in preference to any prior lien or incumbrance, or mortgage upon the land upon which the same is erected or put and any person enforcing such lien, may have such erection, building or other improvement, sold under execution, and the purchaser may remove the same within a reasonable time thereafter." We are clear that it was not the purpose of the legislature to give one who had furnished materials to repair an existing structure a lien on the entire building superior to a mortgage thereon at the time the materials were furnished. This would take from the mortgagee a portion of his security without his consent. It would be an unconstitutional invasion of a property right. See *Meyer* v. *Berlandi*, 39 Minn. 438, 40 N. W. 513; *Croskey* v. *Manufacturing Co.*, 48 Ill. 481. The appellant does not claim that he would have the entire building

sold and removed. He contends that he can sell all of the building which was constructed after the fire. But neither law nor equity has ever decreed the demolition of a structure as a mode of satisfying a lien, nor does the statute lend countenance to any such proposition. The lien is given upon the entire building. If any part can be sold, all can be sold. If all cannot be sold, no part can be sold. But it is further urged that the whole property should in such a case be sold, and the mortgagee given priority of lien upon the proceeds so far as they are derived from the land and the building as it was before the repairing of it was commenced, and the one who furnishes materials be given a first lien upon that portion of the proceeds which resulted from the improvement to the structure. What is there in the statute to warrant such an interpretation of the law? It is said that the lien which is to have precedence so far as the building is concerned is the "lien for the things aforesaid," and that such a lien is a lien for materials furnished to repair, as well as to erect an entirely new structure. But the statute must be construed as a whole. The § (5480) declares that the prior lien which it gives may be enforced by a sale of the building, and that the purchaser may have it removed. Now, is it not evident that it was the purpose of the legislature to vest in the furnisher of materials priority of lien upon the building only in cases where the building could lawfully be sold and removed by the purchaser without working an illegal invasion of the mortgagee's rights? The legislature could not authorize a sale of an entire building to pay the lien of one who had repaired it, with a recorded mortgage against the land existing at the time he made the repairs. There is nothing in the statute to warrant the construction that the one who furnishes the materials is to have a prior lien only upon a part of the building, or upon the materials themselves after they have been embodied in the structure, or that he may sell and have removed such materials, or any portion of the building. The statute gives the lien priority with respect to the entire erection, and to enforce this the holder of it may have the building sold free of any existing

lien upon the land, and the purchaser receives an absolute title, and may remove the building. The prior lien is one which justifies the sale and removal of the structure unaffected by any existing mortgage. But a lien for repairs upon a building covered by a mortgage would not justify a sale and removal of the building, as against such mortgage. We are therefore driven to the conclusion that the legislature never intended to give the furnisher of materials, in such a case, priority of lien upon the building. We have no right to ignore that portion of the section which provides for the enforcement of the priority of lien which the statute creates. The declaration of the section as to the mode of enforcing the right throws light upon the nature and extent of the right. Priority of lien is given in cases where the whole erection may be sold and removed without unlawful encroachment upon the rights of the mortgagee of the land. A familiar doctrine is applicable here. It is not invoked by counsel for respondent, but we deem it controlling. It is elementary that where a new right is created by statute, and a mode of enforcing it prescribed by the same act, that mode is exclusive. 1 Am. & Eng. Enc. Law, 184, and cases cited. The legislature, has given the one who furnishes materials a new right. It has conferred upon him priority of lien, as against a mortgage which would otherwise attach to buildings thereafter erected on the land, as part thereof prior to any subsequent mechanic's lien. Along with this statutory right goes the statutory remedy. The two are inseparably connected. No other remedy can be employed. The lien can be enforced as a prior lien only by a sale of the building as a distinct thing. It must be sold separate from the land, and the purchaser may thereafer remove it. Such priority of lien exists only when a new structure has been put upon the land subsequently to the execution of the mortgage, and the one who claims such prior lien must have contributed to the erection of such building, by the furnishing of materials or the doing of work. The remedy of sale and removal of the building is not given to enforce the lien generally, but merely to make

efficacious the priority of lien, as against an existing mortgage on the land. The one who furnishes materials has clearly a lien on the whole property,—land and all,—subsequent to the lien of the mortgage. This lien he enforces in the ordinary way. But this particular priorty of lien which the statute vests in him is to be enforced in the statutory manner, and in that manner alone. The priority of lien is upon the whole building. To enforce it, there is to be a sale of the whole building, and the purchaser may remove the whole building. Where this cannot be lawfully done, as against the mortgagee, the priority of lien does not exist. We do not care to discuss this question further. This work has already been done by the Supreme Court of Iowa, and by the powerful dissent of Chief Justice Stone in the case of *Wimberly* v. *Mayberry*, (Ala.) 10 South. 157-164, in which Judge Clopton concurred, the court standing three to two on the question. The Iowa Supreme Court has never departed from its earliest ruling on the point. *Getchell* v. *Allen*, 34 Iowa, 560; *Insurance Co.* v. *Slye*, 45 Iowa, 616; *O'Brien* v. *Pettis*, 42 Iowa, 294. See, also, Phil. Mech. Liens, p. 402; *Taylor* v. *Railroad Co.*, 4 Dill 570; *Steam Heater Co.* v. *Gordon*, 2 N. D. 246, 50 N. W. 708. The case before us is not one where, after the commencement of a building, a mortgage is taken upon the property. In such a case the lien for work subsequently done dates from the commencement of the building, as we have already held. *Steam Heater Co.* v. *Gordon*, 2 N. D. 246, 50 N. W. 708. See, also, cases cited in the opinion, at p. p. 251, 252, 2 N. D., and p. 708, 50 N. W. The work on this partially destroyed brewery was not begun until some time after the recording of the mortgage. The ruling of the trial court was clearly right, and the judgment is therefore affirmed. All concur.