AUGUSTUS P. LORING & another, trustees, vs. COMMISSIONER
OF PUBLIC WORKS OF THE CITY OF BOSTON.

Suffolk.    March 9, 1928.— September 20, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, & SANDERSON, JJ.

*Municipal Corporations,* Water rates.    *Lien.    Constitutional Law,* Police
power, Impairment of contract obligation, Due process of law, Equal
protection of law.

The supplying of water has a direct and intimate relation to the public
health, welfare and safety; and the General Court properly may author-
ize municipalities to undertake this service and may enact reasonable
statutes to protect municipalities in furnishing such service.
The lien upon real estate supplied by a municipality with water, established
by § 42A, added to G. L. c. 40 by St. 1923, c. 391, is neither a tax nor
a special assessment for particular benefits: it is a method of securing
the collection of a charge arising from the use on real estate of a public
utility essential to the health and safety of the community, and the
statute is a constitutional exercise of the police power.
The proper exercise of the police power is not narrowed nor inhibited by
arts. 1, 10, and 12 of the Declaration of Rights of the Constitution of
this Commonwealth, nor by the contract clause nor the due process
clause of the Constitution of the United States.
The lien above described does not impair the obligation of a contract con-
tained in a covenant in a lease of real estate in a city, antedating the en-
actment of the statute establishing the lien, which required the lessee
to pay all water rates.
Real estate in a city subjected to the lien established by § 42A, added to
G. L. c. 40 by St. 1923, c. 391, by the filing of the statement under
§ 42B, does not become exonerated from the lien merely because the real
estate was subject to a lease requiring the lessee to pay water rates and
there was unreasonable delay by the city in shutting off the water from
the demised premises for nonpayment of the rates and there was failure
on the part of city officers to comply with ordinances and regulations in
this respect, although during the delay rates for three quarters of the
year became overdue and, almost three months before the water was
shut off, the lessee was adjudicated a bankrupt and there was little
prospect of any substantial dividend to his general creditors, including
the owner of the real estate.

PETITION, filed in the Supreme Judicial Court for the county
of Suffolk on December 23, 1927, for a writ of mandamus,
described in the opinion.

The petition was heard by *Wait,* J., upon an agreed state-

ment of facts.   Material facts are stated in the opinion.   The single justice denied the petition and reported the case to the full court for determination.

Sections 42A–42F, added to G. L. c. 40 by St. 1923, c. 391, read as follows:

"Section 42A.   If the rates and charges due to a city or town which accepts this and the five following sections by vote of its city council or of the voters in town meeting for supplying water to any real estate at the request of the owner or tenant, including interest and costs thereon, as established by local regulations, ordinances or by-laws, are not paid within sixty days after their due date, the same shall be a lien upon such real estate in the manner hereinafter provided. This and the five following sections shall not take effect in a city or town accepting the same as aforesaid until the city or town clerk files in the proper registry of deeds a certificate that said sections have been so accepted.   Each register of deeds shall record such certificate in a book to be kept for the purpose, which shall be placed in an accessible location in the registry.

"Section 42B.   Such lien shall take effect upon the filing for record in the registry of deeds for the county where the real estate lies of a statement by the board or officer in charge of the water department that the rates and charges for water supplied to the real estate therein described, including interest and costs, to an amount therein specified, have remained unpaid for sixty days after the due date, and said lien shall continue for one year from the first day of October next following.   Such statement shall contain the name of the owner of record of such real estate and a description thereof sufficiently accurate for identification.   The register of deeds shall receive and record or, in case of registered land, file and register, said statement.

"Section 42C.   Within a reasonable time after filing such statement for record or registration, the board or officer in charge of the water department shall commit the unpaid account with his warrant to the collector of taxes of the city or town, and such collector shall forthwith send notice in accordance with section three of chapter sixty to the person

designated in such warrant as the owner of record, and any demand for the payment of such account shall be made upon such person. The collector shall have the same powers and be subject to the same duties with respect to such unpaid accounts as in the case of the annual taxes upon real estate, and the provisions of law relative to the collection of such annual taxes, the sale of land for the nonpayment thereof and the redemption of land so sold shall apply to unpaid accounts charged upon real estate under sections forty-two A to forty-two F, inclusive.

"Section 42D. Unpaid accounts under sections forty-two A to forty-two F, inclusive, shall bear interest at the rate of six per cent per annum from the time demand is made under the preceding section, or from such earlier time after their due date as the city or town may by ordinance or by-law provide. Any such account committed to the collector under said section and remaining unpaid shall be added by the collector to the annual tax bill next to be issued, and the total amount of such bill shall be subject to interest under the provisions of section fifty-seven of chapter fifty-nine.

"Section 42E. An owner of real estate aggrieved by a charge imposed thereon under sections forty-two A to forty-two F, inclusive, in addition to such remedy as he may have under section ten of chapter one hundred and sixty-five, may apply for an abatement thereof by filing a petition with the board or officer having control of the water department within thirty days after demand under section forty-two C, and if such board or officer finds that such charge is more than is properly due, a reasonable abatement shall be made; and except as otherwise provided herein, the provisions of chapter fifty-nine relative to the abatement of taxes by assessors shall apply, so far as applicable, to abatements hereunder. If such petition is denied in whole or in part, the petitioner may appeal to the Superior Court for the county where the real estate lies upon the same terms and conditions as a person aggrieved by the refusal of the assessors of a city or town to abate a tax.

"Section 42F. An owner of real estate who, in order to prevent the imposition of a lien thereon or to discharge the

same, has paid charges for water furnished to a tenant or other person who was bound to pay the same, may recover from such tenant or other person in an action of contract the amount of the charges so paid with all incidental costs and expenses."

*C. P. Bartlett,* (*J. Noble & H. J. Coolidge* with him,) for the petitioners.

*S. Silverman,* Assistant Corporation Counsel, for the respondent.

RUGG, C.J. This proceeding was instituted for the purpose of compelling the respondent, as the officer of the city of Boston in charge of its water system, to remove from the registry of deeds statements of liens for water rates filed by him with respect to real estate owned by the petitioners. These statements were filed pursuant to St. 1923, c. 391.

The facts pertinent to the controversy are these: The petitioners are owners of a parcel of real estate in Boston. They leased it to the Middlebrook Wool Combing Company, a corporation, which remained in continuous and exclusive occupation of the estate under the written lease and renewals thereof from early in 1913 until May 14, 1927, when the petitioners entered and terminated the lease for nonpayment of rent. The last renewal lease was dated January 18, 1923. Its term was five years, commencing on February 1, 1923. Under the terms of these leases, the lessee expressly covenanted to pay all water rates. The lessee conducted on the demised premises the business of washing and combing wool, and to the knowledge of the petitioners used large quantities of water. Early in its occupancy the lessee, without objection by the petitioners, installed a large, in place of a comparatively small, intake pipe from the water supply system of the city of Boston, and was the exclusive user of all the water furnished to the premises by the city. Bills for such water during the tenancy bore the names of the petitioners as "owner" and, as the mailing address, the name of the tenant, and were delivered on the premises through the mail to the tenant and were paid by it, except those for the third and fourth quarters of 1926 and first quarter of 1927, all of which remain unpaid. These bills were dated respectively

September 30, 1926, December 31, 1926, and March 31, 1927. The city continued to furnish water to the premises without interruption while these several bills remained unpaid and until after November 1, 1927, when it was shut off at the request of the petitioners.   On August 5, 1927, the tenant was adjudicated bankrupt and there is little prospect of any substantial dividend to its general creditors.   The respondent, acting under St. 1923, c. 391, in his official capacity has filed with the registry of deeds notices of liens on the premises of the petitioners to enforce the claim of the city for the unpaid water bills for the three periods of time heretofore described.   The single justice found as a fact on evidence not reported that the delay of the city in shutting off the water upon failure to pay the water bills as presented was unreasonable.   Apparently that delay also was contrary to the regulations and ordinances of the city.

Provision for an ample supply of water for the use of those who dwell or do business in crowded centers of population is manifestly a public utility of first importance.   It has direct and intimate relation to the public health and public safety and to the public welfare even in its most restricted sense.   This service may be undertaken under legislative authority by municipalities, and the power of eminent domain may be employed in its establishment and maintenance. Commonly in this Commonwealth this service, when conducted by municipalities, has been regarded in many aspects as partaking of the nature of a utility carried on for profit. *Pearl* v. *Revere,* 219 Mass. 604, and cases there collected. It is clear that the police power of the General Court extends to the enactment of all manner of wholesome and reasonable laws to protect municipalities in furnishing water at reasonable rates.   It was said in *Turner* v. *Revere Water Co.* 171 Mass. 329, 331, that, although no lien for water furnished exists or can be imposed unless there is an express statute to that end, "Of course, it cannot be disputed that, if the Legislature gives a lien upon the land to a water or gas company for unpaid dues, or uses words equivalent to giving a lien, it has the right to do so, and there is nothing more to be said," and at page 335, "The Legislature may give such a company

a lien, as it has given one to mechanics." It was decided in *Leighton* v. *Ricker*, 173 Mass. 564, that, in the absence of a statute to that effect, the owner or lessor is under no legal duty to provide water to a tenant, and in *Brand* v. *Water Commissioners of Billerica*, 242 Mass. 223, that the municipality undertaking to furnish water cannot deny water to a tenant and insist upon dealing with the lessor or owner.

A lien for water rates is neither a tax nor a special assessment for particular benefits. It is a method of securing the collection of a charge arising from the use on real estate of a public utility essential to the health and safety of the community. It is supported on the general principles which justify the imposition of liens of numerous kinds. It must be regarded as settled that in general the Legislature may provide for the establishment and enforcement of liens upon the real estate to which water is furnished, even on the order of tenants and in the absence of an express direction by the owner. This is on the broad ground that such liens may aid in providing an adequate supply of water at reasonable rates and hence may be an appropriate element in a scheme of legislation for a public water supply. *Turner* v. *Revere Water Co.* 171 Mass. 329. *Provident Institution for Savings* v. *Mayor & Aldermen of Jersey City*, 113 U. S. 506. *Dunbar* v. *New York*, 251 U. S. 516. The subject in its main aspects has been so thoroughly discussed in these decisions that it now would be futile to do more than refer to them. The general current of authority in other States is in harmony. *Atlanta* v. *Burton*, 90 Ga. 486. *Ford Motor Co.* v. *Kearny*, 91 N. J. Law, 671. *State* v. *Water Supply Co.* 19 N. M. 27, 32, 33. *East Grand Forks* v. *Luck*, 97 Minn. 373. *Girard Life Ins. Co.* v. *Philadelphia*, 88 Penn. St. 393. Dillon on Mun. Corp. § 1323.

The exercise of the police power within its sphere is not narrowed or inhibited by arts. 1, 10, 12 of the Declaration of Rights of the Constitution of this Commonwealth or by the contract clause or the due process clause of the Constitution of the United States; but the question always arises whether the legitimate bounds of the police power have been exceeded in any particular instance. *Commonwealth* v. *Boston Trans-*

*script Co.* 249 Mass. 477, 483. *Fairmont Creamery Co.* v. *Minnesota,* 274 U. S. 1, 10, 11.' *Ribnik* v. *McBride,* 277 U. S. 350, decided May 28, 1928. A chief contention of the petitioners is that, as applied to the facts here disclosed, the enforcement of the liens would be unreasonable and hence violate the provisions of the Constitution of this Commonwealth and of the Fourteenth Amendment to the Constitution of the United States. The argument is put forward that, since the lease from the petitioners to the tenant, for whose use the water was furnished, antedated the enactment of the lien statute, and since the lease placed the obligation to pay for city water furnished on the demised premises upon the tenant, the petitioners cannot be presumed even impliedly to have consented to the imposition of the lien. The fallacy of this argument lies in the assumption that the exercise of the police power depends upon the express or implied consent of the persons affected. Land may be subjected to liens for a variety of public improvements, such as the construction of streets, sewers and sidewalks, the sprinkling of streets, the establishment of parks, of drainage areas and of irrigation districts, and like public enterprises, when many of the owners may violently oppose the project. The mill acts, whereby the full use by some owners of real estate may be limited by the use made by another owner of his real estate, rest upon a somewhat analogous principle. The primary and fundamental inquiry is whether the interests of the public require the improvement. When that inquiry is answered in the affirmative, and the means adopted are reasonable, private rights must yield. The interests of the public are paramount and private considerations are subsidiary where the public health and safety are at stake, irrespective of the assent or dissent of property owners. Private property, including contract rights and real and personal estate, is held subject to the lawful exercise of the police power. *Opinion of the Justices,* 261 Mass. 523, 553. *Provident Institution for Savings* v. *Mayor & Aldermen of Jersey City,* 113 U. S. 506, 515, 516. *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349, 355. *Atlantic Coast Line Railroad* v. *Goldsboro,* 232 U. S. 548, 558. *Thornton* v.

*Duffy,* 254 U. S. 361, 369.   The general principle that all
property is held subject to regulations necessary for the
public good in its proper sense has been applied to uphold
liens imposed by the Legislature on all logs in boom for
scaling fees against any one owner, *Lindsay & Phelps Co.* v.
*Mullen,* 176 U. S. 126, and on a stranger's goods in possession
of a guest for the benefit of an·innkeeper, *Horace Waters &
Co.* v. *Gerard,* 189 N. Y. 302, and to impose on brothers and
sisters liability for the support of a pauper, *People* v. *Hill,*
163 Ill. 186.

The case at bar does not present an instance of an attempt
to establish a lien for water furnished prior to the enactment
of the statute.   The water here in question was all delivered
after the statute as to liens became operative.

There is no sound ground on which to rest a contention
that the liens impair the contract between the petitioners
and their tenant to the effect that the latter should pay all
water rates.   The liens do not in any respect impair the
obligation of that contract.   That obligation remains in full
force.   The lien is simply an additional security to the city.
But as was said in *Union Dry Goods Co.* v. *Georgia Public
Service Corp.* 248 U. S. 372, 375, 376: "That private contract
rights must yield to the public welfare has often been de-
cided by this court."   *Chicago, Burlington & Quincy Railroad*
v. *McGuire,* 219 U. S. 549, 567–569.   *Opinion of the Justices,*
261 Mass. 523, 553.

Even on the doctrine of implied assent, to which reference
is made in *Dunbar* v. *New York,* 251 U. S. at pages 517, 518,
the petitioners cannot prevail.   They are charged with
notice of the statute.   It is almost unthinkable that any
landlord should wish his buildings to be without a water
supply.   It was within the power of the petitioners to ascer-
tain whether the rates were being paid promptly by their
tenant and to have taken steps to protect themselves.   Many
liens have been upheld where the inference of implied consent
was quite as tenuous as in the case at bar.   See, for example,
liens for repairs on a vehicle against a mortgagee, *Hammond*
v. *Danielson,* 126 Mass. 294, or on an automobile against a
mortgagee, *Guaranty Security Corp.* v. *Brophy,* 243 Mass. 597,

and against a conditional sale vendor, *Dunbar-Laporte Motor Co.* v. *Desrocher,* 247 Mass. 292.    There is nothing pertinent to the present issues in *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 7, where the police power was not involved, but only a possibly retroactive statute.    There is nothing of that sort in the case at bar.

The circumstances that there was unreasonable delay by the city in shutting off the water from the demised premises for nonpayment of the rates and that there was failure on the part of city officers to comply with ordinances and regulations in this respect, do not exonerate the land of the petitioners from the lien.    It is provided in § 42A, added to G. L. c. 40 by St. 1923, c. 391, that, "If the rates and charges due to a city . . . for supplying water to any real estate at the request of the owner or tenant, . . . are not paid within sixty days after their due date, the same shall be a lien upon such real estate . . . ."    This remedy is provided in addition to all other and previous remedies open to the city and not as an alternative to any of them.    It does not impair or cut down such remedies in any particular.    The purpose in the enactment of this provision was to facilitate and increase, and not to restrict and hamper, the collection of water rates.    It was designed to prevent losses to the public revenue.    The right to the lien is not made dependent upon compliance with city ordinances or regulations, but is quite distinct and separate from such subsidiary considerations.    The right to the lien also is independent of the state of the initial obligation to pay for the rates.    It is of the utmost importance to the rental value of real estate that there be available for use on it an abundant supply of water.    It is this factor of utility on which the statute is in part founded, and on which it may be justified.    In that aspect, it is of slight consequence whether the tenant or the landlord may order the turning of the water into the intake pipes of the real estate.    It was contemplated by the petitioners and their tenant that water was to be used on the demised premises, and they provided so far as they could that payment for such use should be made by the tenant rather than by the landlord.    The default of the tenant did not relieve the real estate from the lien which had been

imposed by the superior public authority for the preservation of the public health and safety. The fact that the tenant has become insolvent is the misfortune of the petitioners, but it does not affect the enforcement of a right lawfully established for the public welfare. *Dunbar* v. *New York*, 251 U. S. 516, 518.

Unreasonable delay in shutting off the water for non-payment of the water bills is a factor irrelevant to the enforcement of the lien in conformity to the enabling statute. The Legislature has not imposed any such limitation upon the lien. It is not within our province to do so. *Fairbanks* v. *Mayor & Aldermen of Fitchburg*, 132 Mass. 42, 47, 48.

No questions as to practice or procedure or form of remedy have been raised, and we have not considered them. Since the result must be the same in any event, we have treated on their merits the issues raised by the parties on the record. *Commonwealth* v. *McNary*, 246 Mass. 46, 48, and cases there collected. *Davis* v. *Smith-Springfield Body Corp.* 250 Mass. 278, 284. *Diaz* v. *Patterson*, 263 U. S. 399, 402.

*Petition dismissed.*