[File No. 6426.]

FEDERAL FARM MORTGAGE CORPORATION, a Corporation, Appellant, v. MARTIN FALK, Jr., et al.
COUNTY OF STUTSMAN of the State of North Dakota; State of North Dakota Doing Business as the Hail Insurance Department, Respondents.

(270 N. W. 885, — A.L.R. —.)

Opinion filed December 14, 1936. Rehearing denied January 11, 1937.

A. W. *Aylmer, John Thorpe* and *George I. Reimestad* (*Peyton R. Evans, H. W. Lee* and *M. A. Schmill* of counsel) for appellant.

*P. O. Sathre,* Attorney General, *Chas. A. Verret,* Assistant Attorney General and *R. D. Chase,* State's Attorney, for respondents.

CHRISTIANSON, J.   The plaintiff brought this action to foreclose a mortgage executed and delivered to it by the defendants, Martin Falk and his wife.   The mortgage was executed and delivered on January 2, 1934, and covers certain lands in Stutsman county in this state.   The county of Stutsman, and the state of North Dakota, doing business as the State Hail Insurance Department, were joined as parties defendant.   It is alleged in the complaint that they claim certain interests in, or liens or encumbrances upon, said real property adverse to the plaintiff.   It is further alleged that there is an unpaid hail indemnity tax for the year 1935 in the sum of $128.00 which the said county of Stutsman and the State Hail Insurance Department claim to be a lien against a portion of the land covered by the mortgage.   The county of Stutsman and the State Hail Insurance Department interposed an answer wherein they allege that a hail indemnity tax was assessed and levied for the year 1935 in the sum of $128.00 against certain lands covered by the mortgage sought to be foreclosed in this action.   In such answer it is also alleged that such hail indemnity tax is a lien paramount to the lien of plaintiff's mortgage.   The plaintiff demurred to the answer on the ground that it does not state facts sufficient to constitute a defense.   The demurrer was brought on for argument.   In connection with the demurrer "and to be used and made a part of the files and records in connection with the hearing on said demurrer" the parties, through their respective

counsel, entered into a written stipulation, wherein it was stipulated as a fact:

"That the hail indemnity tax for the year 1935 in the amount of One Hundred Twenty-eight Dollars ($128.00), alleged and referred to in Paragraph 11 of the Separate Answer of said defendants, County of Stutsman of the State of North Dakota, and the State of North Dakota, doing business as Hail Insurance Department, was, and is, in all things levied, assessed and spread in manner and form, and at the time or times, as provided by law; and that due, timely and proper application was made, and never withdrawn, for such hail insurance covering crops upon the lands mentioned and described in the plaintiff's complaint in the above entitled action."

The trial court overruled the demurrer and the plaintiff has appealed.

The sole question presented on this appeal is whether the lien of the hail indemnity tax levied in 1935 is superior to the lien of plaintiff's mortgage. The answer to this question depends upon the constitutionality of the provision in chapter 137, Laws 1933, that "the lien" of the hail indemnity tax "shall be prior and superior to all mortgages, liens and judgments executed subsequent to the approval of this act."

The plaintiff contends that this provision is violative of the guarantees in the state and Federal constitutions, that no law shall be passed impairing the obligation of contracts. U. S. Const. Art. 1, § 10, N. D. Const. § 16. Also that it violates the due process and equal protection of the law clauses of the 14th Amendment to the Constitution of the United States. The trial court held that it did not contravene these constitutional guarantees and that consequently the hail indemnity tax lien is superior to the lien of plaintiff's mortgage. A determination of the question thus presented involves a consideration of the constitutional and statutory provisions of this state relating to state hail insurance.

At the general election in 1918 two constitutional amendments were adopted authorizing the legislative assembly to provide for the insurance of crops against damage by hail. Amendments to North Dakota Constitution, Art 24, Laws 1919, p. 502; Art. 30, Laws 1919, p. 507. The legislative assembly in 1919 established the State Hail Insurance

Department, Laws 1919, chap. 160. The law then enacted made it the duty of all county and township assessors to list and return the number of tillable acres in every tract of land subject to taxation together with the name of the person in whose name the land was taxed and the number of acres of such land, if any, in crop or to be sowed or planted to crop during the year. The crops on the land became insured against loss by hail, unless the owner exercised the right to withdraw the same from the operation of the act.

The law made it the duty of the commissioner of insurance, on or before the 10th day of October of each year, to ascertain the amount, "which is required in addition to the amount secured by said flat acreage tax for the total payment of all loss caused by hail to crops insured by the department, plus the total cost of maintaining and operating said department, together with a sufficient sum to maintain and operate the same for the succeeding year" and to levy an indemnity acreage tax "sufficient to cover said amount on all actually cultivated and cropped land (except hay and meadow land) not withdrawn from the operation" of the act. Laws 1919, chap. 160, § 7.

The 1919 Law also provided that "all provisions of law with reference to lien and collection of taxes, shall apply to the taxes herein specified." Laws 1919, chap. 160, § 10. The laws of this state then in force provided that taxes upon real property are "made a perpetual paramount lien thereupon against all persons and bodies corporate, except the United States and the State." Comp. Laws 1913, § 2186.

Certain sections of the State Hail Insurance Act were amended at a special session of the legislative assembly held in December, 1919, but §§ 7 and 10 of the original act were not changed. Chapter 38, Special Session Laws, 1919.

The State Hail Insurance Act was amended and re-enacted by the legislative assembly in March, 1921. Laws 1921, chap. 77. So far as material here the provisions of the law as thus amended and re-enacted read as follows:

Section 7. "The Commissioner of Insurance shall on or before the 25th day of October of each year ascertain the amount which is required for the total payment of all loss caused by hail to crops insured by the department and a sum sufficient to pay interest at the rate of six per cent on all warrants issued from the first day of December

until called for payment by the state treasurer plus a sufficient sum to maintain and operate the department for the succeeding year, and shall thereupon for the purpose of securing and paying the same levy an indemnity acreage tax sufficient to cover said amount on all cropped land insured (except hay and meadow land) not withdrawn from the operation of this act as hereinafter specified, . . ."

Section 8. "After the Commissioner of Insurance shall have determined and levied said indemnity acreage tax he shall forthwith notify the County Auditor of each county of such levy, and the County Auditor shall spread such indemnity and flat tax on the tax rolls in separate columns for that purpose. Such indemnity taxes and flat acreage taxes shall be collected by the Treasurer of said county and shall be kept in a separate fund to be known as the State Hail Insurance Fund."

Section 10. . . . "All laws relating to the collecting of penalty and interest, and sale of realty for non-payment of taxes, shall apply to taxes accruing under this Act."

In 1925 the legislative assembly amended the law establishing the State Hail Insurance Department so as to provide that any hail indemnity tax "which has been heretofore, or may hereafter, be levied shall be and constitute a first and prior lien upon all lands upon which the same is levied, to the same extent and with like effect as any general tax and shall be collected, and payment thereof enforced, in the same manner as any general tax." Laws 1925, chap. 151, § 1, Amending Laws of 1919, chap. 160, § 7.

In the course of the administration of the State Hail Insurance Law questions arose as to the status of the so-called hail indemnity tax under the laws enacted in 1919 and 1921. The Commissioner of Insurance and public officers charged with the administration of the laws took the position that the hail indemnity tax was a tax within the legal purview and contemplation of that term; that it was of precisely the same nature as a general tax levied upon the lands against which the hail indemnity tax was levied and that consequently it took priority over any and all other liens or encumbrances.

The question as to the status of the hail indemnity tax was first presented to this court in Davis v. McLean County, 52 N. D. 857, 204 N. W. 459. The question in that case was whether hail indemnity taxes levied during the years 1920 and 1921 under the legisla-

tive enactments of 1919 and 1921 respectively, constituted liens superior and paramount to the lien of a mortgage executed and delivered in 1915. This court held that the state hail indemnity tax was not a tax within the legal purview of that term; that in each instance it rested upon the consent of a private individual or individuals; that it did not owe its existence to any positive act of the government; that it was devoid of the fundamental essentials of a tax and hence that a mortgage taken before the act became effective had priority over a hail indemnity tax lien. The question as to the status of a hail indemnity tax levied under the act of 1921 was again considered by this court in State v. Johnson, 54 N. D. 184, 208 N. W. 966. That case involved a question of priority as between hail indemnity taxes levied in 1921 and subsequent years under the statute as amended and re-enacted in 1921 and a real estate mortgage that had been executed and delivered May 6, 1920. The mortgage was foreclosed and the premises bid in by the mortgagee who obtained a sheriff's deed therefor. The land had been sold at the tax sale for the delinquent taxes for 1921 and such delinquent taxes included delinquent hail indemnity taxes for 1921. The grantee in the sheriff's deed sought to redeem from the tax sale by paying merely the amount of the general tax. The grantee in the sheriff's deed contended that the hail indemnity tax was a lien subsequent and inferior to the lien of the mortgage and that, consequently, the grantee in the sheriff's deed was not required to make redemption from the lien of such taxes. The county auditor refused to accept the amount tendered. The purchaser brought mandamus to compel the county auditor to accept the moneys tendered and issue the appropriate certificate of redemption. In the mandamus proceeding the county auditor contended that the state hail indemnity tax was a general legal tax having priority over the mortgage, and that consequently the purchaser at the sheriff's sale who acquired title pursuant to the foreclosure of the mortgage could not redeem from the tax sale without paying the hail indemnity tax. This court held that the mortgage given May 6, 1920, was a lien prior to the hail indemnity tax levied in 1921 and subsequent years under the statute enacted by the legislative assembly in March, 1921.

The decision in Davis v. McLean County, 52 N. D. 857, 204 N. W. 459, supra, became final June 17, 1924; and the decision in State

v. Johnson, 54 N. D. 184, 208 N. W. 966, supra, became final May 26, 1926. In 1933 the legislative assembly amended and re-enacted the provisions of the state hail insurance law so as to provide that hail insurance would be granted only upon the written application, or pursuant to the consent, of the owner of the land. The act was further amended as regards the hail indemnity tax to provide as follows:

"Such hail indemnity tax shall be a general tax against the whole of said tract, parcel, or subdivision of land in like manner and to the same effect as general state and county taxes. It shall be of the same order and the lien therefor shall share ratably with other general tax liens in all tax proceedings and tax sales, and it shall be subject to all the provisions of law relating to general taxes except as hereinafter provided. The lien of the tax herein provided for shall be prior and superior to all mortgages, liens and judgments executed subsequent to the approval of this Act. Such tax shall become due and payable at the same time as other general taxes and delinquent at the same time as the first installment of other general taxes except that said tax shall be paid as a whole and not in installments.

"Provided, further, that this Act shall be legal notice that the hail indemnity taxes levied during any year after the passage and approval of this Act are prior and superior to mortgages, contracts for sale of realty, liens and judgments executed or otherwise coming into existence after the approval of this Act. . . ." Laws 1933, chap. 137, § 3.

We are agreed that the hail indemnity tax imposed under the legislative enactment of 1933 cannot be sustained either as a general tax or as a special assessment for benefits to the real property. It is not a tax within the legal purview of that term and cannot be sustained as such. Davis v. McLean County, 52 N. D. 857, 204 N. W. 459, supra. It is equally clear that the hail indemnity tax cannot be sustained as a special assessment for benefits. Provident Inst. for Sav. v. Jersey City, 113 U. S. 506, 514, 28 L. ed. 1102, 1105, 5 S. Ct. 612; 25 R. C. L. pp. 79, et seq. The question, therefore, presents itself whether the lien which the statute purports to create can be sustained, even though the hail indemnity tax is neither a general tax, nor a special assessment for benefits.

There is a marked difference between the legislative enactment of 1933 and the enactments of 1919 and 1921 as regards the lien of the hail indemnity tax. The enactment of 1919 provided for the levy of a hail indemnity tax and declared that "all provisions of law with reference to *lien* and collection of taxes, shall apply to the taxes herein specified." The enactment of 1921 declared that "all laws relating to the collecting of penalty and interest, and sale of realty for non-payment of taxes, shall apply to taxes accruing under this act." There was no express declaration in either the 1919 or the 1921 enactments that the hail indemnity tax should be a lien superior to existing mortgages; and there was nothing in either of these acts expressive of any legislative intention to create a statutory lien other than one that would result from the imposition of a tax within the legal purview of that term. In both Davis v. McLean County, 52 N. D. 857, 204 N. W. 459, supra, and State v. Johnson, 54 N. D. 184, 208 N. W. 966, supra, the claim that the hail indemnity tax constituted a lien having priority over existing mortgages was predicated upon the proposition that the hail indemnity tax was a legal tax and stood on precisely the same ground as a general tax on real property levied for the general support of the government; and that the tax was levied and the resulting lien created by the exercise of the inherent taxing power of the state. The legislative enactment of 1933 specifically provides that the lien of the hail indemnity tax "shall be prior and superior to all mortgages, liens and judgments executed subsequent to the approval of this act." It further provides that the act "shall be legal notice that the hail indemnity taxes levied during any year after the passage and approval of this act are prior and superior to mortgages, contracts for sale of realty, liens and judgments executed or otherwise coming into existence after the approval of this act." This language leaves no room for construction so far as concerns the legislative intention. The language is clear and unequivocal and evidences a legislative intention to create a statutory lien having priority over liens and mortgages that come into existence subsequent to the passage and approval of the law.

It is true the statute speaks of the hail indemnity tax as a "tax;" but notwithstanding the fact that the legislature used the term "tax"

the provisions of the 1933 enactment show that the lawmakers' realized that the hail indemnity tax was not a "tax." If it were a tax it would, of course, take priority over all liens without regard to when they came into existence. But, as was pointed out by this court in Davis .v. McLean County, 52 N. D. 857, 204 N. W. 459, supra, and State v. Johnson, 54 N. D. 184, 208 N. W. 966, supra, the hail indemnity tax is not a tax. It does not come into being as a result of the exercise of the power of taxation for the support of the government. In each instance it owes its existence to the consent of an individual or individuals. As regards each tract of land it lies within the power of an individual or individuals to cause the hail indemnity tax to be levied or not to be levied. The hail indemnity tax is in reality a premium for hail insurance protection furnished by the State Hail Insurance Department, and the right to receive payment of the tax is predicated upon the contractual relations between the parties and not upon the taxing power of the state. The legislative assembly has provided that when the contractual relation has been created and the protection furnished, that there shall be a lien upon the real property for the hail indemnity tax. The fact that the statute speaks of the hail indemnity tax as a tax is not of controlling importance. On the one hand the legislature cannot, by mere definition, transform an ordinary debt arising out of contract into a tax and transform the contractual obligation of an individual into an obligation to the state for a tax. "The voice of the legislature cannot alter the essential nature of things. No legislative fiat can make that a tax which is not and cannot be a tax." Yeatman v. King, 2 N. D. 421, 424, 51 N. W. 721. On the other hand, an enforced proportional contribution of persons and property levied by authority of the state for support of the government and for all public needs, does not cease to be a tax because the legislature may designate it by some other name. "The substance and not the shadow" determines the validity of the exercise of legislative power. If the legislature provides for a statutory lien in any given case it is not to be condemned as violative of the Constitution by the application of any artificial rule or because the legislative will might have been expressed in more accurate terms. It is to be condemned only where the conclusion is required that the necessary operation and effect of the statute will contravene the constitution. State ex rel. Fargo v.

Wetz, 40 N. D. 299, 318, 168 N. W. 835, 5 A.L.R. 731; State ex rel. Haggart v. Nichols, 66 N. D. 355, 265 N. W. 859, 864.

"We are not concerned with the wisdom or expediency of the legislative enactment or with the form in which the legislative will was expressed further than to ascertain the intention of the lawmakers and to determine whether such intention, as expressed in the act, contravenes any constitutional inhibitions. In other words, we are concerned alone with the question of legislative power; the limitations upon that power are those fixed by the constitution. State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583. For as was well said by the great Chief Justice: 'Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited but consistent with the letter and spirit of the constitution, are constitutional.' M'Culloch v. Maryland, 4 Wheat. 316, 4 L. ed. 579." State v. First State Bank, 52 N. D. 231, 248, 202 N. W. 391.

The controlling question in this controversy therefore resolves itself to this: "Is the provision in the legislative enactment of 1933 that the lien of the hail indemnity tax 'shall be prior and superior to all mortgages, liens and judgments executed subsequent to the approval of this act' violative of the constitutional guarantees invoked by the plaintiff?" A careful consideration leads us to the conclusion that this question must be answered in the negative.

It is well settled that where any reasonable grounds exist for so doing the legislative assembly may provide that a person, who at the request or with the consent of another has rendered service, furnished materials or supplies, shall have a lien on some property or thing of value belonging to the person at whose request or consent, and for whose benefit, the services were performed or materials or supplies furnished. And where such statute operates prospectively it is not violative of the due process or equal protection of the law clauses of the 14th Amendment to the Constitution of the United States. 12 C. J. Constitutional Law, §§ 910, 733, 744, 1033; Rockford Sav. & L. Asso. v. Rockford, 352 Ill. 348, 185 N. E. 623; Provident Inst. for Sav. v. Jersey City, 113 U. S. 506, 28 L. ed. 1102, 5 S. Ct. 612; Dunbar v. New York, 251 U. S. 516, 64 L. ed. 384, 40 S. Ct. 250;

Monthly Installment Loan Co. v. Skellet Co. 124 Minn. 144, 144 N. W. 750; Loring v. Commissioner of Public Works, 264 Mass. 460, 163 N. E. 82; East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393, 6 L.R.A.(N.S.) 198, 7 Ann. Cas. 1015; Garr, S. & Co. v. Clements, 4 N. D. 559, 62 N. W. 640. Ordinarily, however, a statute providing for such lien may not operate retrospectively and a state legislature cannot provide for a lien that will impair the obligations of a contract in existence at the time of the enactment of the statute or that will destroy then existing vested property rights. 12 C. J. §§ 522, 733, 734. "That there is an essential difference in principle between laws which act on past, and those which act on future contracts; that those of the first description can seldom be justified, while those of the last are proper subjects of ordinary legislative discretion, must be admitted." (Chief Justice Marshall, Ogden v. Saunders, 12 Wheat. 334, 6 L. ed. 647, 648.) In the statute under consideration here the legislative assembly recognized this limitation upon legislative power and it restricted the operation of the law as regards the lien of a hail indemnity tax to a tax levied after the passage and approval of the law; and it gave a hail indemnity tax priority only as to mortgages and encumbrances that came into existence after the passage and approval of the law. The language of the statute negatives any legislative intention to impair contracts in existence at the time the statute came into being or to take anything away from any person who then had a vested right in any tract of land under a contract. The statute speaks prospectively only. It says that all hail indemnity taxes levied after the passage and approval of this act shall take priority over mortgages and encumbrances that come into being after such passage and approval. And it serves notice upon all persons who may take mortgages or encumbrances upon lands in North Dakota subsequent to the passage and approval of the act that in event the owner of such lands causes a contract to be made with the state hail insurance department (in conformity with the state hail insurance law) to insure crops growing on such lands that then such mortgage will be subject to a lien for the hail indemnity tax levied under the provisions of the law in payment of the premium for such hail insurance protection. So far as we can ascertain, the precise question involved here has not been determined either in this or in any other jurisdiction in this country.

It does appear, however, that analogous questions,—questions involving the same principles,—have arisen and have been passed upon by the courts of some of the states and also by the Supreme Court of the United States. In Provident Inst. for Sav. v. Jersey City, 113 U. S. 506, 28 L. ed. 1102, 5 S. Ct. 612, supra, the Supreme Court of the United States had occasion to consider the constitutionality of a law of the state of New Jersey which made water rents a charge on land, with a lien prior to all other encumbrances, in the same manner as taxes or assessments. The New Jersey statute involved in that case provided that the rent for the use of water should be a lien upon the house, tenement or lot "in the same way and manner as other taxes assessed on real estate in Jersey City are liens, and shall be collected in like manner." 28 L. ed. p. 1104. The Supreme Court of New Jersey had decided that the charge thus imposed for water rates could not be sustained either as a tax or as a special assessment for benefits (28 L. ed. 1105); but that the charge imposed for water actually used was valid on the ground that there was an implied contract to pay therefor. 28 L. ed. 1105. The question arose whether the lien so given by the statute for water rents took priority over a mortgage given subsequent to the enactment of the statute but prior in point of time to the furnishing of the water and the imposition of the lien for water rent. It was contended by the holder of the mortgage that in so far as the New Jersey statute provided that the lien for water rents should have priority over a mortgage in existence at or prior to the time the water was furnished and the charge for rent incurred, it was violative of the due process clause of the 14th Amendment to the Constitution of the United States. In disposing of that contention the Supreme Court of the United States said:

"As the case comes before us, it is not necessary to enter into the discussions that have occupied the State Courts. We are to assume that the rents, penalties and interest claimed by the city have been imposed and incurred in conformity with the laws and constitution of the State; and that, by virtue of said laws and constitution, they are a lien on the property mortgaged to the complainant prior to that of its mortgages; and, this being so, we are only concerned to inquire whether those laws thus interpreted are, or are not, repugnant to the Constitution of the United States. The only clause of the constitution

supposed to be violated is that portion of the 14th Amendment which declares that no State shall deprive any person of life, liberty, or property without due process of law. It is contended that the mortgages created in 1863 and 1869, there being then no valid water rents due on the lot mortgaged, invested the complainant with the first lien thereon, and that that lien is property; and that the Statutes of 1852 and 1871, by giving a superior lien to water rents afterwards accrued, deprive it of its said property without due process of law.

"What may be the effect of those statutes, in this regard, upon mortgages which were created prior to the Statute of 1852, it is unnecessary at present to inquire. The mortgages of the complainant were not created prior to that statute, but long subsequent thereto. When the complainant took its mortgages, it knew what the law was; it knew that, by the law, if the mortgaged lot should be supplied with Passaic water by the city authorities, the rent of that water, as regulated and exacted by them, would be a first lien on the lot. It chose to take its mortgages subject to this law; and it is idle to contend that a postponement of its lien to that of the water rents, whether after accruing or not, is a deprivation of its property without due process of law. Its own voluntary act, its own consent, is an element in the transaction. The cases referred to by counsel to the contrary, holding void a consent exacted contrary to the Constitution, have no bearing on the present cases." 113 U. S. 514, 515, 28 L. ed. 1105, 5 S. Ct. 612.

Dunbar v. New York, 251 U. S. 516, 64 L. ed. 384, 40 S. Ct. 250, involved the validity of a provision in the charter of the city of New York imposing a lien for water rents upon premises where the water was furnished. In that case the water had been supplied to a tenant. Under the terms of the lease the lessee had "convenanted to pay the charges for water which should be assessed against or imposed upon the building during the lease, and if not so paid it should be added to the rent then due or to become due." 64 L. ed. 385. Water was supplied to the tenant and he failed to pay the charges. The landlord brought action to cancel the charges as a lien against the property and prayed for an injunction against its enforcement. The action was predicated upon the proposition that the charter provision authorizing the lien for water rents operated to deprive the owner of the building

of property without due process of law. The Supreme Court of the United States ruled that the statute did not deprive the owner of his property without due process of law "since the landlord's consent may be implied from the leasing with knowledge of the law,—especially as the lease as made contemplated the use of the water by the tenant, and provided, so far as the landlord could, for the payment of the water charges." (Syllabus, 64 L. ed. 384.)

In Ford Motor Co. v. Kearny, 91 N. J. L. 671, 103 A. 254, L.R.A.1918D, 361, the New Jersey Court of Errors and Appeals held:

"The fact that a statute providing for a lien against the 'premises' for unpaid-for water supplied thereto by a municipality, is on the statute books, reads into every lease when made an authority to the tenant to subject such premises to such lien for the unpaid-for water which the circumstances indicate the parties contemplated should be supplied (within the limitations of the statute) to the tenant upon the premises in pursuance of the lease." (¶ 4, Syllabus.)

In Garr, S. & Co. v. Clements, 4 N. D. 559, 62 N. W. 640, supra, this court had under consideration a statute which gave to a person who, at the request of the owner thereof, performed labor upon or furnished materials for a threshing engine or separator, a lien thereon. The statute provided that such lien should "have priority over all other liens or encumbrances upon said threshing engine or separator created subsequent to the passage and approval of this act, to be filed within ten days from the date upon which said labor was performed or materials furnished." Laws 1890, chap. 88, § 2. It was contended that the statute was unconstitutional in so far as it provided that such lien should take priority over existing mortgages. In disposing of that contention this court said:

"The plaintiff assails as unconstitutional that portion of the law which gives such a lien priority over a mortgage on the property, executed, delivered, and filed before the lien was created. It is urged that there is only one ground on which a lien can lawfully be given such priority, and that that is the implied assent of the mortgagee to the creation of the lien. It is contended that, unless the owner can be regarded as the agent of the mortgagee for that purpose, his rights cannot be impaired by anything the owner may do. We will assume this position to be sound, but we are unable to deduce from it the

conclusion that the statute is unconstitutional. This statute, in legal effect, informs every mortgagee in every mortgage thereafter executed that by leaving the mortgaged property in the possession of the owner he thereby makes the owner his agent for the purpose of having necessary repairs made, the cost of which will be a first lien upon the property. . . . We are unable to discover a single adjudication holding void such a statute as the one in question. An unbroken line of authority, a settled rule of the common law, sound principle and a due regard for business convenience, all join to sustain this statute."

In East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393, 6 L.R.A.(N.S.) 198, 7 Ann. Cas. 1015, the Supreme Court of Minnesota held that a statute that made an owner of premises liable for water and light furnished by a municipality to a tenant did not operate to deprive such owner of his property without due process. The court further held that such charges were not taxes but that the obligation on the part of the owner rested in contract.

Under these authorities we see no reason why the legislature may not provide that the hail indemnity tax shall constitute a lien having priority over liens and mortgages coming into existence after the statute was enacted. Constitutional guarantees of due process of law and equal protection of the law and against the impairment of contracts can be taken advantage of only by persons whose constitutional rights are affected. State ex rel. Linde v. Taylor, 33 N. D. 76, 102, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583. Obviously the statutory provision under consideration here did not impair the obligations of the contract involved in this action. By its express terms the statute applies only to mortgages made after the passage and approval of the law. Hence, in the very nature of things it could not impair existing contracts. The statute in question here serves notice upon all persons who take a mortgage upon lands in North Dakota subsequent to the passage and approval thereof, that such mortgage will be subordinated to any hail indemnity tax lien that thereafter may arise thereunder. The statute took nothing away that was in existence. It did not deprive the plaintiff of property without due process, neither did it deny to it the equal protection of the laws. All mortgages taken after the statute was enacted are subjected to the same rule. It applies

in the same way to all similarly situated. When the plaintiff "took its mortgage it knew that, by the law," if the state hail insurance department insured crops on the land covered by such mortgage, pursuant to the application or with the consent of the owner, that the hail indemnity tax fixed and enacted under the terms of the state hail insurance law as a premium for the hail insurance protection, would be a lien on the land prior to such mortgage. The plaintiff "chose to take its mortgage, subject to this law," and it seems apparent that the postponement of its lien to that of the hail indemnity tax lien is not an impairment of its contract; nor is it a deprivation of its property without due process of law or a denial to it of the equal protection of the laws. Provident Inst. for Sav. v. Jersey City, 113 U. S. 506, 28 L. ed. 1102, 5 S. Ct. 612, supra; Garr, S. & Co. v. Clements, 4 N. D. 559, 62 N. W. 640, supra; Ford Motor Co. v. Kearny, 91 N. J. L. 671, 103 A. 254, L.R.A.1918D, 361, supra; Loring v. Commissioner of Public Works, 264 Mass. 460, 163 N. E. 82, supra; Rockford Sav. & L. Asso. v. Rockford, 352 Ill. 348, 185 N. E. 623, supra; Dunbar v. New York, 251 U. S. 516, 64 L. ed. 384, 40 S. Ct. 250, supra; Monthly Installment Loan Co. v. Skellet Co., 124 Minn. 144, 144 N. W. 750, supra.

The basic subject matter of the legislation involved here is one peculiarly within legislative control. The business of insurance itself is impressed with a public interest so as to justify legislative regulation to an extent that may not be justified in many other types of business. State ex rel. Linde v. Taylor, 33 N. D. 76, 120, 121, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583. In enacting the state hail insurance law "the legislature exercised its police power,—'the power inherent in every sovereignty . . . the power to govern men and things,'—under which power, the legislature may, within constitutional limitations, not only prohibit all things hurtful to the comfort, safety, and welfare of society, but prescribe regulations to promote the public health, morals, and safety, and add to the general public convenience, prosperity and welfare." (33 N. D. 123, 124).

Appellant's counsel appear to place special reliance on the decision of this court in State v. Johnson, 54 N. D. 184, 208 N. W. 966, supra. It is contended that in that case this court, in effect, ruled that it was beyond legislative power to make the lien of a hail in-

demnity tax prior to the lien of a mortgage that came into existence before such lien came into being. As has been pointed out, the hail indemnity tax lien involved in State v. Johnson, supra, arose under the statute of 1921. The pertinent provisions of that law have been quoted above. It appears therefrom that that law did not purport to make a hail indemnity tax lien a statutory lien having priority over mortgages given subsequent to the enactment of the law. That statute did not even provide that the provisions of law regarding the lien of general taxes should apply to hail indemnity taxes. The only basis on which the hail indemnity tax lien was predicated in State v. Johnson, 54 N. D. 184, 208 N. W. 966, supra, was that it was actually and legally a tax and that the mere designation thereof in the law as a tax would establish its character, and operate to give it priority as such. The differences between the legislative enactment of 1921 and that of 1933 are obvious. The rule of *stare decisis* cannot be invoked in favor of decisions concerning a former statute which is different from the one under review. 15 C. J. 945, 954. "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." Cohen v. Virginia, 6 Wheat. 264, 399, 5 L. ed. 257, 290. "It is a general rule," said Chief Justice Marshall (Ogden v. Saunders, 12 Wheat. 333, 6 L. ed. 647) . . . "that the positive authority of a decision is co-extensive only with the facts on which it is made."

Our conclusion is that the statutory provision in question here does not operate to impair the obligation of contracts, to deprive the plaintiff of its property without due process of law, or to deny to it the equal protection of the laws. It follows that the trial court was correct in over-ruling plaintiff's demurrer to the answers. Order affirmed.

BURKE, Ch. J., and BURR, NUESSLE and MORRIS, JJ., concur.

CHRISTIANSON, Ch. J. (On Petition for Rehearing). Appellant has petitioned for a rehearing. In such petition the legal questions raised on the appeal and considered and determined in the former opin-

ion in this case are re-argued. The contentions advanced by the appellant are epitomized in the petition as follows:

"1. That the 1933 amendment to the hail insurance law, in so far as it seeks to make so-called hail indemnity taxes liens prior to pre-existing mortgages taken after the passage of that amendment, is unconstitutional for all the reasons urged above. The legislature may not, merely by fiat, create a situation so that eventually the protection afforded by the fourteenth amendment shall not be available to anyone within that state.

"2. The settled law of the State of North Dakota, at the time the Appellant's mortgage was taken, was such that the Appellant was justified in believing that the mortgages thereafter taken by it would be liens prior to subsequently assessed, levied or determined so-called hail indemnity taxes.

"3. The law as so settled was and is a rule of property entering into the mortgage of the Appellant in this case, and if this Court desires to change the rule as announced in the above cited cases of James River Lumber Co. v. Danner, 3 N. D. 470, 57 N. W. 343, supra, and State v. Johnson, 54 N. D. 184, 208 N. W. 966, supra, it should make such change operate prospectively only and not applicable to mortgages in existence at the time the rule is so changed."

We have again considered the questions involved on this appeal in light of the argument and authorities presented in the petition for rehearing.

1. We adhere to the conclusions announced in our former opinion that the legislative enactment of 1933 does not violate any of the constitutional provisions invoked by the plaintiff. In other words, it is our opinion that such legislative enactment does not operate to deprive the plaintiff of property without due process of law; or deny to it the equal protection of the law; or impair the obligations of its contract.

2. This being so it follows that the "settled law of the state of North Dakota at the time appellant's mortgage was taken" as regards whether the lien of the hail indemnity tax in question here is "prior and superior to a mortgage executed subsequent to the approval" of chapter 137, Laws 1933, was set forth in that statute; and it specifically provided that the lien of a hail indemnity tax "shall be prior and superior to all mortgages, liens and judgments executed subsequent to

the approval" of such act. Appellant, as well as all other persons, corporations and concerns doing business in North Dakota, was chargeable with notice of and bound by the provisions of that law.

There was a deliberate legislative purpose to establish the lien of a hail indemnity tax as prior and superior to all mortgages, liens and judgments executed subsequent to the approval of the act. Following the decisions of this court in Davis v. McLean County, 52 N. D. 857, 204 N. W. 459, supra, and State v. Johnson, 54 N. D. 184, 208 N. W. 966, supra, the Commissioner of Insurance recommended to the legislature "that the hail indemnity tax, by legislative action, be made a lien prior and superior to any other lien executed subsequent to the passage and approval of such legislation." Such recommendation was made to the legislative assemblies which convened in 1929, 1931 and 1933. (Annual Report of the Hail Insurance Department for the year 1930, p. 12; Annual Report of the Hail Insurance Department for the year 1932, p. 9.) The legislative assembly in 1933 enacted the statute conformable to the recommendations of the Commissioner of Insurance.

The state hail insurance department is a legislative creation. The department itself and the plan of operation thereof were peculiarly for legislative consideration. And the records of the legislative assembly disclose that the subject was one to which the different legislative assemblies gave much consideration. It was for the legislature to determine the policy of the state hail insurance department. The legislative power in this particular field was limited only by the provisions of the constitution of the state and of the nation. Obviously the court may not substitute its judgment for that of the legislature as regards the wisdom or desirability of legislation.

The function of the court is to ascertain the intent of the lawmakers as expressed in the law and to give effect thereto unless it clearly appears that to give effect to such intent will result in a violation of some provision of the state or Federal constitution.

The language employed by the legislature in the provision under consideration here is clear and specific. There is no room for misunderstanding. The legislature said: "The lien of the tax (hail indemnity tax) herein provided for, shall be prior and superior to all

mortgages, liens and judgments executed subsequent to the approval of this act." The act was approved March 7, 1933.

As was said by this court in State v. Rother, 56 N. D. 875, 219 N. W. 575:

" 'The legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expressed, so that the act read by itself, or in connection with other statutes pertaining to the same subject, is clear, certain, and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms.' Lewis's Sutherland, Stat. Constr. 2d ed. p. 701. 'Courts only determine by construction the scope and intent of a law when the law itself is ambiguous or doubtful. If a law is plain, and within the legislative power, it declares itself and nothing is left for interpretation. It is as binding upon the court as upon every citizen. To allow a court, in such a case, to say that the law must mean something different from the common import of its language, because the court may think that its penalties are unwise or harsh, would make the judicial superior to the legislative branch of the government, and practically invest it with the lawmaking power.' The remedy for a harsh or unwise statute is not in interpretation, but in amendment or repeal. State v. Duggan, 15 R. I. 403, 6 A. 787; 2 Lewis's Sutherland, Stat. Constr. p. 706."

3. The law as it existed prior to the enactment of chapter 137, Laws 1933 was, of course, applicable to mortgages made prior to that date; but mortgages made subsequent to that date are subject to the provisions of that enactment. In the very nature of things this court could not, in James River Lumber Co. v. Danner, 3 N. D. 470, 57 N. W. 343 (decided December 28, 1893) or State v. Johnson, 54 N. D. 184, 208 N. W. 966, supra, (decided May, 1926) have made any determination of rights arising under the statute enacted by the legislative assembly in March, 1933. It is, we think, too clear for argument that nothing said in those cases as regards the liens there involved could possibly constitute a rule of property so as to tie the hands of the legislature in 1933 and prevent it from then enacting legislation prospective in its operation.

The question presented in this case is one of legislative power. Either the legislative enactment of 1933, in so far as it provided that

hail indemnity taxes levied subsequent to that act should have priority over mortgages executed subsequent to such approval, operated to deprive plaintiff of its property without due process; or deny it the equal protection of the law; or impair the obligations of its contract, or it did not. If it operated so to do, then the statute would be invalid without regard to anything that might have been said in decisions of this court in prior years regarding other liens; if on the other hand the statute did not so operate and it was within legislative power to enact it, then the statute does not become unconstitutional because of something said in former decisions dealing with other and different legislative enactments. Dunbar v. New York, 251 U. S. 516, 519, 64 L. ed. 384, 385, 386, 40 S. Ct. 250.

For reasons stated in the former opinion we are all agreed that the legislative assembly, in the enactment of the statutory provision under consideration here, did not contravene the guarantees of the Federal Constitution invoked by the plaintiff. A rehearing is denied.

NUESSLE, BURKE, MORRIS and BURR, JJ., concur.